Here she comes. Good afternoon Judge Rawlinson. Can you hear us okay? We can. Welcome to the Ninth Circuit. We have three cases for argument on our calendar this afternoon and three cases that have been submitted under briefs. The cases and Tracy v. Kijikazi. First case on our calendar for argument today is Bahra v. County of San Bernardino. Counsel, I suspect you all are familiar with this but your time is on the little clock. It will count down. If you want to save some time for rebuttal, please let me know. I'll try to remember but you're responsible for keeping track of your time. Ms. Crane, I think you're up first. Thank you. Good afternoon. Laura Crane for Appellant County of San Bernardino. I'm going to try to reserve two minutes for rebuttal. Fortunately, I'm just clarifying a few points from the briefing starting with the emotional distress argument. I have three points. The first is that the county's position is that the evidence does not support the award. The district court stated the correct standard in saying that the California requires evidence of severe emotional distress but it applied in a way that is contrary to the California standard. Is your argument on that point that the evidence was insufficient to demonstrate severe emotional distress? Because I'm having some difficulty in the way you phrase it. The district court cited the case with the California standard, said it was applying that standard. What you're really saying, I think, is that the evidence wasn't sufficient to demonstrate severe emotional distress? Of a value of two million dollars. Well, there's two separate questions and that's why I wanted to ask you about them. Yes, there was sufficient evidence to support an award of emotional distress. Was there? Yes, the county's position would be to agree that there was evidence of emotional distress, that the award was supported, but that an award of two million dollars is grossly disproportionate. Right, and I want to get to that argument, which I think is the centerpiece of this case. But that's why I don't understand the first one. If the evidence was sufficient to support some award, and the California law seems to be that you only get emotional distress damages for severe emotional distress, then I'm not sure what your argument is about misapplying the law. And that the California law establishes that if you're going to have a large award, something more than one million dollars, you're going to see a physical manifestation of some sort. And there is no evidence of a physical manifestation sufficient to support a two million dollar award. The Briley case, obviously I rely on it heavily because it's, you so rarely get a case that just lays out the standards throughout the state so clearly, and goes through the case law in such detail, where you really can see that distinguishing mark that an award under a million dollars appears to be something that typically flows from a termination. You're going to experience anxiety, you're going to be worried about paying your bills, you may even have a headache or a stomachache, but you're not getting the ulcer in the eye that results in permanent eye loss. Do you read Briley as requiring physical damage as a value? Because it's an important part of your case. I've been, I've reread it several times, and I'm not sure it says, in order to get more than a million, you must show physical damage as a matter of law. It recounts the evidence in that case, which to me seems a little less severe than in this case, but also doesn't involve physical damage, and says this bundle of stuff shouldn't get you more than a million. What if the bundle in this case is a little larger? What do we do then? I think you still have to look at whether it is grossly disproportionate to the reasonable limits of compensation, such that it shocks the sense of justice and raises a presumption of prejudice, and that that case law really helps establish when do we, when are we put into that category of cases, and that this one is. I would say that the two cases are actually equal on the facts. Well, but let me, let's assume they're not for a moment, but here's what I wanted to get to. We're reviewing a federal court judgment, and you concede now that some award was appropriate for emotional distress. Correct. So we're reviewing a federal court judgment to see whether it is so large that it can't stand. Don't we apply federal law to determine that, as opposed to state law? So what is a reasonable judgment? Whether the judge erred in finding that the judgment was so large that it should have been reduced. I mean, I'm not sure the standards are different, but it seems to me it's basically a shocks the conscience standard. If we're looking at what the standard is for a California statute, then we should be looking at California law. Well, but no, we're not looking for what the standard, we're looking for what the standard is when an award justified under a California statute is too large. And as I read the cases that we, this is a matter of federal law because the case was tried in federal court. So the standard of review? Yes. Yeah. Then standard of review, I agree, is federal, but what is grossly disproportionate is state. Okay. Whether, whether it's grossly disproportionate or shocks the case. You say a million is about, it's just sort of like the three little bears. The three bears are going, you know, it's one's too hot, one's too cold. The other one's just right. And you say a million is just right. Or at the max or something. Uh, how do I, how do I determine that? I mean, I made the trial judge had a conscience. Uh, trial judge came out somewhere different. How do we, how do we figure out what? I want to ask you a procedural question next. But how do we figure out what the right line is? And the case law talks about that, that you should, you should look to other cases, but still allow the case to stand alone. Um, and look for factors of prejudice, which we absolutely have here. Well, we have a closing argument pleading with the jury to pay Mr Barra to keep the community safe or to save the Children by giving Mr Barra all he's entitled to, as opposed to concentrating on Mr Barra's damages. We have signs of prejudice that result in an award that is disproportionate to reasonable compensation. I think this is the time that the courts really need to look at this closer. As we see these huge nuclear verdicts, we have to look at when is it appropriate for the appellate courts to evaluate these and that that we need more appellate review for out of control verdicts that could you object to that part of the closing argument by way of motion for a new trial? Yes, but not contemporaneously. Not contemporaneously. So that have you forfeited that objection? I cited case law in my brief that allows for the objections to be considered on the motion for a new trial. I'd have to find. Yeah, but it's considered at a different standard of review, is it not? It was the judge. The judge. It's a little unfair to a trial judge. You could have said at the time that you objected contemporaneously. You know, this is just argument. Don't. This is flourishes. Don't pay attention to that. To later say we're gonna reverse the judge for not for not undoing it in a new trial motion. I would have preferred to have a record with the objection in closing, but I deal with the record. I have. We made the objection in the motion for new trial, and it also the trial was just replete with this prejudice, allowing so much evidence on abuse of children, as that's my second on the whistle. Second question. Most I've gone through the record fairly carefully, and it doesn't appear that most of the whether or not it could have been avoided or not is less clear. Doesn't appear that most of this evidence was objected to at all. Correct. But now you're saying it unfairly prejudiced the verdict. Don't you have some obligation if you think evidence is inflammatory or prejudicial to object to it? It would be beneficial. Now, I'm gonna I'm gonna I only have one more question, I think, at this point, and I hope the I don't want to preclude the other judges from because I've asked too many, but I'm not sure what you would have us procedurally do. We can't order a judgment in the amount of X. Maybe California appellate courts can do that, but we cannot. So let's assume we agree with all your arguments. What are the last two lines of the opinion read like? What are we doing? It would be remanded for a new trial on damages alone. Yes, case law in California. Well, could we remand for a new trial on damages alone, unless the plaintiff agreed to a remitter in the amount that you say is the maximum allowable amount, which is a million dollars? Yes, if the moving or if I agreed. That's how I understand the case law. Okay, I didn't have, but you may have had more arguments you wanted to make. I may have taken you off track and the other judges may have questions. We've hit two of my three in emotional distress, so we're doing quite well. The third was just to clarify the issue of how long does the county contend that the emotional distress lasted. There's the issue of whether it he was had more good days or bad at what point in time. So in volume three of the trial transcripts on page 747 is the location the county relies on. Sorry, line 12. Mr. Bonner asked Mr. Barra, other than what we've talked about, has the county terminating you caused you to suffer any other anxiety? Mr. Barra responded, I think, over the course of really the whole time that I was on administrative leave. And up until I found another job, it was extremely extreme source of anxiety. So the county contend this is the first point that Mr. Barra comes to satisfying the Briley standard of, was there a substantial resolution? And then the next page talks about that. He had another curative effect in 2019 when he was able to start working with children. So on the outside, the county would say it's three and a half years. So eight months or three years. And that's where we get the feeling day to day is on the next page when he talks about obtaining a new job. So I think I wasn't that clear on that in my briefing. But moving on to the fees issue. Sorry, these are on the trial transcripts on page 747, beginning on line 12, continuing to... I have it as the volume three of the trial transcripts. I believe it was in volume eight of the excerpts of record. And the same... Actually, I think it has a different page number. So I can... If it is in my briefing, I can give it to you again. On the improper... Or going to the fees issue. On the private attorney general doctrine, it's briefly that the district court looked only at compensatory damages and failed to consider the large non economic damages sought in this case. That's why we feel that that standard was applied incorrectly. Well, except it's a discretionary standard. Do you agree? The statute says the judge may award damages. Correct. May award fees. This case went up to the Court of Appeals, back down again. There's a good argument that a public benefit arose from it because a terrible problem apparently was exposed. Why would we fund a judge abused discretion in awarding fees there just because the judge didn't mention every single factor that you... We can't wholly ignore that large pecuniary interest that the plaintiff had in this case. And that the point of the private attorney general doctrine is to assist plaintiff's attorneys in taking the case and motivate them by providing... Yeah, but you're seeking to cut down the large pecuniary award. So if we agree with you that the award ought to get cut down, shouldn't the attorney's fees stay? If I get all that I want, it would be 500,000 in emotional distress and 500,000 in economic, right? So he's still getting a million dollars. And no attorney's fees. Definitely substantial economic... And no attorney's fees. And no attorney's fees. Okay. So would you address the argument that even if this statute doesn't apply, the other statute does? Right. So on the retroactive nature of Labor Code 1102.5, I definitely could clarify my analysis on that case law. And the point I was trying to make is that the case laws cited Coast, Olson, Keeblin, Woodland, those were all addressing statutes that extended existing rights. This statute, the Labor Code section, created a new right. And... But those cases say, and they're California cases, those cases say that we apply the statute in effect at the time of the trial. And that's what I would... I'm arguing... And they may be wrong, but we can't fix California law. I'm arguing that those cases are distinguishable because they were... Many were talking about the private attorney general statute, which codified existing law. This created a whole new law. So every time the county negotiated for settlement, it had no clue that attorney's fees were looming in the near future. Whereas when you were negotiating over the private attorney general fees, it was existing in case law and became codified. So it's definitely... You wanted to save some time for rebuttal. Yes, I do. Thank you. And I wanted to remind you. Right. Thank you, Your Honor. Mr. Bonner. Good afternoon, Your Honors. May it please the Court. Cabral Bonner, Law Offices of Bonner and Bonner with my co counsel, Vali Ross, for the plaintiff, appellee, cross appellant, Eric Barra. I'll first talk about the denial of Rule 59 motion, then I'll address the attorney's fees. I think the key issue here on a denial of a Rule 59 motion is that we are focused on the... We are present with the discretion of the judge. This court has held that it will only reverse a denial of a Rule 59 motion in four very specific circumstances that are set forth in the Landis case. And if those circumstances aren't present, as they aren't here, then the Ninth Circuit will only reverse a denial of a Rule 59 motion if there is an absolute absence of evidence. Are those... I've read those cases, and this is what was giving me some concern. There's two different types of Rule 59 motions, I suppose. One is the verdict is just against the weight of the evidence. The judge is acting as the 13th juror. And I agree that we should only reverse... And when a judge denies one of those, we should be very reluctant to reverse because if there's any evidence, then the jury gets to make the decision. This is a little different, isn't it? This is an argument that the verdict is so large that it... Pick your favorite term. California calls it monstrous in one of the cases. Shocks the verdict or shocks the conscience or whatever. Do we really review that to just see whether there's any evidence to support the judgment? Your friend concedes there's plenty of evidence to support a judgment. Isn't the question a little bit different under those circumstances? Well, I think if we were at a $10 million verdict, you might be correct. Or a $15 million verdict, you might be correct. Or what they got in the Teza case. Well... I understand that, and we can talk about Briley because I think there are a lot of key distinguishing factors. First, in Briley, I think you have to look  what evidence came forward. The court said Briley offered little detail regarding the distress he had experienced or the impact his termination had on his life. And that... There were physical manifestations, and the trial court found that. They took the form of being... Upset stomach, headaches, shortness of breath, inability to sleep. He had... Counseling or treatment for any of those conditions. He did not, but that's not required in California. There is no case law that requires... But maybe California doesn't require it, but it does suggest that the manifestation was pretty limited. I don't think that's what the evidence was on the record. He had multiple friends, yes, but they were all mental health care professionals. Mariana Whitehall testified, he appeared depressed. He looked like he wasn't getting enough sleep. He repeatedly talked about the false allegations. And what time period are we talking about here? We're talking about throughout. That's part of my problem. What was the judgment... What was the award for? So I understand that it was a wrongful termination case. Well, the award was for the damage that he suffered from when he first started... Well, you're telling me what the damage was, but I'm asking you what the liability stems from. This is a wrongful termination case, as I understand it. It is. And most of the damages sought appear to precede the termination. Is there any authority that supports an award of damages for a period that preceded the wrongful act? It is a retaliation claim. So all of the conduct that's part of the retaliation is included. He didn't have to be terminated. 11.2.5 is a whistleblower statute. Any adverse action is compensatable. What was the adverse action? In 2013, within four weeks of blowing the whistle, he is ushered into an administrative hearing where they present to him six allegations of wrongdoing that were all false. Six allegations, all false. And that was right before he was terminated. Does this trial involve an element that you prove that the allegations of wrongdoing are false? We have to establish that the county's proffered legitimate business reason is pretext. That is because in 11.2.5... Yeah, but that's... Yes, but that doesn't necessarily mean that they're false. It just means they're not things about which you would have been fired. In other words, I could say I'm firing you because you have an orange tie on. You do have an orange tie on. That would be a pretext because we don't fire people for orange ties, but it wouldn't necessarily be false. In this context, they were false. They were false allegations and they were trumped up in order to create... So your argument is that his damages began whenever the retaliation began, which preceded his termination? Yes, the retaliation, the false administrative hearing where they bring out allegations of misconduct is a adverse employment action. The law does not require to be terminated. It requires adverse employment action. But let me ask Judge Clifton's question in a slightly different way. It's a lot of money. It's a large award. And the only comparator we seem to have is Briley. My view is that your evidence is a little bit better than Briley's, but is it twice as good as Briley's? I don't know what we're supposed to do in this circumstance, but it does seem large. So I will speak to Briley specifically. Briley says on what is much, I believe, much weaker evidence. The evidence that they cite, that they stress, it was, quote, tough. Mr. Barra talked about very specific, concrete incidents that happened to him. He talked about not being able to go to church, for example, because it was too far away. He talked about the fact that he missed mortgage payments and was about to be foreclosed on. He talked about the fact that even after the termination, after he found a new job, he did not want to hang out with his friends who were dependency social workers because it wasn't work he could do anymore. He felt depressed and saddened by hanging out with his friends because they were doing the work he couldn't do anymore. If you look at his economic loss, he was making $133,000 as a social worker. The first year, it went down to $30,000. The next year, it was $66,000. Is there some double counting in this in some way? You get the economic damages. Do you then get the emotional distress suffered because you didn't get the money at the time? Absolutely, because at the time, that's when you're trying to pay your bills. That's separate and apart from the loss of the money. The stress and anxiety is, how do I pay my bills? If you look at the page that was even cited by, just now, in court, he talks about on... It's 773 of the excess of record. He talks about the five stages of grief and loss which you go through. Anger, denial, bartering, depression, acceptance. And the thing that I tell my own patients is that it's a fluid system. You can find yourself in acceptance stage one day, in anger stage the next day. And it feels like it's been a lot over this past eight years, where I feel like, okay, I've accepted it, and then I'm trying to move on. But now, I find you have your bad days when you find yourself agitated, depressed over the whole thing. On the stand, in 2021, he is still suffering from what happened. And if we look at, essentially, what it sounds like you're asking if you can do is weigh the evidence that the trial judge heard. And that's why I go back to the abuse of discretion standard. Well, no, and that's... I do think we're reviewing for abuse of discretion. What I'm less clear about is whether we're reviewing to see whether there's any evidence, because we're talking about the weight of the evidence in this case. And I take your point. I'm just... I think our standard is the same one the trial judge probably meant to apply. If there were a number, if it were 10 million, I would say it shocked my conscience. It was much too large, and I wouldn't defer to the trial judge's conscience. The problem I think I'm struggling with here is it seems too large, but it doesn't seem monstrous, I suppose, is the way I guess I would put it. And I don't know what I'm supposed to do under that circumstance. You're supposed to affirm. If it seems too large... We can have large judgments, but if it's not... Well, there's another piece here I wanna get to before we lose all of your time, and that is... Who was awarded the damages here? It was your plaintiff, right? Yes. So how do you make an argument to the jury to give him the money in order to save the children? And how to argue that this is actually a private attorney general action because you're saving children? How are the children saved? You told us about a lawsuit that was intended to recompense the children. This isn't it? This is a whistleblower case where Mr. Barra uncovered the fact that there were these systemic problems within San Bernardino Family Services where information was not properly being tracked that led to children being placed in the home. I thought it was your brief that told us the problem was that Mr. Rodriguez's name had been misspelled somehow, so they didn't pick up the record that they had for the person that actually put the four children in the care of. Is that the systematic problem? The systematic problem, it was uncovered based on this Rodriguez with a Q versus Rodriguez with a G, but there had been 54 children placed in this home after it had been decertified. So these were just the last children placed there. There had been dozens of other children placed there based on the lack of following through and properly capturing the information that was required. And within days of discovering this, Mr. Barra has his office rifled through. Within weeks, he's put on desk duty. Within weeks after that, he's put on administrative leave and then he's terminated. I understand the argument about the distress he's suffered. I don't understand the argument about saving the children. A whistleblower statute is about someone who is on the inside recognizing that there are problems on the inside and blowing the whistle to make the situation better. And he gets a cause of action as a result. Yes. And he can claim damage as a result. Yes. How can he claim damages for the suffering of the children? The suffering of the children is advocacy in order to establish that he is a whistleblower. The things he blew the whistle about were things that were in public interest. Your argument was, give him what he asked for in order to save the children.  By giving plaintiff all the money since he's entitled to. Yes. That's quantity of money that you're talking about. And I just don't understand the connection to saving the children. That argument wasn't objected to. So I'm addressing it only in the context of, is this word shocking the conscious? Is it unjustified? And it strikes me as not unlike the factors that Briley cites as being beyond the pale. Well, I think that's a good point. But in Briley, what you had was the plaintiff's counsel saying the defense counsel lied to the jury. Lied to the jury by saying, you don't know the meaning of that word. That is way out from what we did. We engaged in some advocacy. How is saving the children a lot closer to the norm? Because saving the children evokes the fact that we're talking about... Well, if you were arguing it to show that he was a whistleblower, that would make some sense. But Judge Clifton, I think, correctly says, arguing it is to say, make the award larger because we're saving the children. And that's not a component of damages, is it? No, it is a component of whistleblower statutes. Whistleblower statutes are designed to impact the public good. But weren't you... Wasn't it argued... I mean, I'm kind of thinking if somebody had objected, the judge might have said, well, you're right. This goes to whether he's a whistleblower and not to damages. And we might not have a problem, which is why I'm concerned about taking it up. But it does seem to me it's not an appropriate measure of damages. It is advocacy and it's not improper. Of course it's advocacy. It's final argument. These are not facts, ladies and gentlemen of the jury. They're the arguments of counsel. But it's also... But that doesn't... I'm not sure where that gets me, the fact that it's advocacy. It's not improper. If we had said the defense attorney lied to you, that is improper. This is improper. I don't see how it's proper in terms of quantity. And the statement at closing argument, give him fully because by fully compensating him, you will save the children. I mean, that's a quantity argument. And that's the second time in the same paragraph as put here that that argument is made. And I just don't get how that connects to an award of this size. It connects. How we're saving the children. I mean, I can figure out, okay, you're gonna slam the county so they can't miss it, but... It's not that, Your Honor. It's the fact that the whole purpose of having whistleblower statutes is so that people blow the whistle. And if you do not compensate people who blow the whistle, they will not blow the whistle. You're arguing about fully compensating, giving him everything he's asking for. That's right. That's something different. No, I don't think that's different because the whole purpose of these whistleblower statutes is so that people don't... If you learn what happened to Eric Barra, if someone wanted to challenge what was going on in their municipality, and they saw, well, if I do that, then I'm gonna be subjected to false allegations, I'm gonna lose the ability to do this career that I love, I'm gonna be called a liar, I'm gonna have 12 allegations of wrongdoing, I'm gonna have to go through a civil service hearing, gonna lose my job, be unemployed, almost get foreclosed on because I don't have money, people wouldn't blow the whistle. So fully compensating them is creating the safety that whistleblower statutes are supposed to create. If we had an award, if we had a front page news, Eric Barra wins his case, he gets $100,000, no one would blow the whistle. The purpose of asking for the award that fully compensates him, and we blackboarded his economic damages, we asked for way more money than they gave us in non economic damage, so even if it were improper, it's harmless. We asked for like $6.3 million. So if you asked for $3 trillion, it's always harmless? No, it's not harmless, but for example... I guess what you're saying is the jury didn't buy your argument, they didn't fully compensate him under your argument. And here's why, we asked for future economic damages, we asked for future non economic damage, they gave us zero. Zero, if this was a jury that was motivated by passion and prejudice or bias or two comments in closing, certainly they would have given money for future economic damage. Counsel, you've exceeded your time. I'm at a process. Thank you for your argument and we'll let the county finish up. Okay. Oh, let me, before you sit down, I wanna make sure Judge Rawlinson didn't have any questions for you. No, I didn't. Thank you, counsel. Thank you. I would like to start with addressing that the case is nearly identical to Briley. I think the distinguishing is that Briley saw a counselor and Mr. Bauer did not. Briley did not have stomach aches and Mr. Bauer did. So I feel like it makes them equal. Well, except the appellate court in Briley said, there's hardly any testimony about this. And here there's testimony from third parties and there's testimony about how he couldn't do X, Y or Z. In terms of the intensity of the testimony, this case seems to have more intense and more powerful testimony than Briley. It may not have... It's in common with Briley in that it doesn't have a visit to a doctor, you know, those sorts of things, different physical manifestations than the one that counsel described. But it does seem to have stronger evidence than Briley. I would say it's redundant that he had... Mr. Bauer had multiple witnesses on the same facts, whereas Mr. Briley only testified on his own. So maybe there's verifying evidence there. But meanwhile, Briley testified he continued to think about it every single day and it continued to affect every part of his day. Whereas Mr. Bauer said he was having more good days than bad by the time of trial and actually by the time he'd gotten started working with Children again. But I believe I'm out of time. Let me make sure neither of my colleagues has questions for you. If not, thank you. This case will be submitted.
judges: RAWLINSON, CLIFTON, HURWITZ